

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| UBS FINANCIAL SERVICES, INC. | § § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No.: 6:17-00607-MGL |
| BANCO POPULAR DE PUERTO RICO, MARIEL BABCOCK, and EDWARD WALTER SMITH, in his capacity as Personal Representative of the Estate of Mark Richard Babcock, | § § § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This is an interpleader action brought under 28 U.S.C. § 1335.  The Court has jurisdiction under that same statute.

Pending before the Court are Plaintiff UBS Financial Services, Inc.'s (Plaintiff) Motion to Interplead Bond, Discharge Plaintiff from Liability, Enjoin Defendants from Other Actions, and for Award of Attorneys' Fees and Costs (Plaintiff's Motion to Interplead Bond), Defendant Edward Walter Smith's, in his capacity as Personal Representative of the Estate of Mark Richard Babcock (Mr. Smith), motion to dismiss (Mr. Smith's Motion to Dismiss), and Defendant Banco Popular de Puerto Rico's (BPPR) Motion to Dismiss Crossclaims of Mariel Babcock (Mrs. Babcock) (BPPR's Motion to Dismiss Crossclaims).  Having carefully considered the motions, the

responses, the replies, the record, and the applicable law, it is the judgment of the Court: (1) Plaintiff's Motion to Interplead Bond will be granted as modified in part, granted in part, dismissed without prejudice in part, and denied in part; (2) Mr. Smith's Motion to Dismiss will be granted; (3) BPPR's Motion to Dismiss Crossclaims will be denied without prejudice; and (4) Mrs. Babcock will be granted leave to amend her crossclaim against BPPR.

## II. FACTUAL AND PROCEDURAL HISTORY

This interpleader action arises out of multiple claims to a portion of the assets in a traditional individual retirement account (IRA) managed by Plaintiff. The IRA account at issue was originally owned by non-party Mark Richard Babcock (Mr. Babcock). *See* ECF No. 33-4. It was titled the "Mark Richard Babcock Traditional IRA" and bore an account number ending in 13 (Mr. Babcock's Account). *See id*. Mr. Babcock designated his wife, Mrs. Babcock, as the sole beneficiary of his Account. *See* ECF No. 33-6.

Mr. Babcock died on July 4, 2015, in Greenville, South Carolina. *See* ECF No. 33-7. At the time of his death, Mr. Babcock was a resident of Greenville County, South Carolina. *See id.* The estate of Mr. Babcock was opened in the Probate Court for Greenville County, South Carolina on or about July 14, 2015, and Mr. Smith is the personal representative of Mr. Babcock's Estate. *See* ECF No. 1 ¶¶ 4-5.

On or about July 16, 2015, Mrs. Babcock completed and submitted Plaintiff's IRA Beneficiary Processing Form to request a transfer of the assets in Mr. Babcock's Account. *See* ECF No. 33-8. UBS subsequently opened a new account named the "Mark Richard Babcock Traditional IRA FBO Mariel Babcock" and ending in account number 32 (Mrs. Babcock's Account). *See* ECF No. 33-9. In July 2015, UBS transferred all of the assets in Mr. Babcock's

Account to Mrs. Babcock's Account. *See* ECF Nos. 33-4, 33-9. Mrs. Babcock's Account remains active and is managed by Plaintiff's Greenville, South Carolina location. ECF No. 1 ¶ 17.

On or about June 2, 2016, Plaintiff received an order (Account Restriction Order) from the Puerto Rican Commonwealth Trial Court, San Juan Division (Puerto Rico Court), in a collection action brought by BPPR against Mr. Babcock (Puerto Rico Action). *See* ECF No. 33-11. Neither Plaintiff nor Mrs. Babcock nor Mr. Smith is a party to the Puerto Rico Action. *See id.*

The Puerto Rico Court entered the Account Restriction Order in response to an emergency motion brought by BPPR requesting a garnishment of Mr. Babcock's assets held by Plaintiff to permit BPPR to collect the deficiency on a foreclosure judgment it had obtained against Mr. Babcock. *See id.*; *see also* ECF No. 33-16 at 3. The Account Restriction Order directed UBS to prohibit withdrawals in both Mr. and Mrs. Babcock's Accounts that would result in an account balance of less than $399,738.51 pending a decision by the Puerto Rico Court on BPPR's motion to garnish Mr. Babcock's assets. *See* ECF No. 33-11. After receiving the Account Restriction Order, UBS restricted Mrs. Babcock's Account and sent a letter addressed to Mr. Babcock as the account holder notifying him of the restriction and attaching a copy of the Account Restriction Order. *See* ECF Nos. 1 ¶ 18, 1-1.

On or about June 29, 2016, Plaintiff received an order from the Puerto Rico Court (Garnishment Order) directing it to sell enough of the assets in Mr. Babcock's Account and/or Mrs. Babcock's Account to cover the deficiency of $399,738.51, plus interest and costs, on BPPR's foreclosure judgment against Mr. Babcock. *See* ECF No. 33-12. On August 19, 2016, Plaintiff filed an Informative Motion with the Puerto Rico Court informing it of certain information Plaintiff deemed relevant to the Puerto Rico Action, such as Mr. Babcock's death. *See* ECF No. 52-1. On September 23, 2016, the Puerto Rico Court entered an order (September 2016 Order)

directing Plaintiff to deposit $399,738.51 with the Puerto Rico Court from Mr. Babcock's funds held by Plaintiff. *See* ECF No. 33-13.

On October 11, 2016, Plaintiff filed a motion to reconsider in the Puerto Rico Action requesting the Puerto Rico Court reconsider its Garnishment Order and the September 2016 Order. *See* ECF No. 33-15; *see also* ECF No. 33-2 at 6. The Puerto Rico Court entered an order denying Plaintiff's motion to reconsider on February 16, 2017. ECF No. 33-15.

On March 3, 2017, Plaintiff filed its interpleader complaint (Complaint) in this action, naming BPPR, Mrs. Babcock, and Mr. Smith as defendants. ECF No. 1. On or about that same day, the Puerto Rico Court entered an order (March 2017 Order) instructing Plaintiff to comply with its prior orders and pay the garnished sum into the Puerto Rico Court within ten days or be subject to "severe penalties." *See* ECF No. 33-16.

Mrs. Babcock filed a motion for a temporary restraining order in this action on March 10, 2017, ECF No. 7, which the Court granted on March 13, 2017, ECF No. 9. On March 17, 2017, Mrs. Babcock filed a motion for a preliminary injunction requesting the Court enjoin Plaintiff from transferring any money from her Account to BPPR or the Puerto Rico Court or acting in furtherance of any garnishment order in the Puerto Rico Action. ECF No. 15. The parties fully briefed Mrs. Babcock's motion for a preliminary injunction, and, following a hearing, the Court entered an Agreed Preliminary Injunction Order. ECF No. 51.

Plaintiff filed its Motion to Interplead Bond on March 22, 2017, ECF No. 33, and Mr. Smith filed his Motion to Dismiss on March 23, 2017, ECF No. 35. Mrs. Babcock filed a response on March 27, 2017, informing the Court she does not oppose Mr. Smith's Motion to Dismiss. ECF No. 38. On April 4 and 5, 2017, Mrs. Babcock and BPPR filed responses in opposition to Plaintiff's Motion to Interplead Bond, respectively. ECF Nos. 49, 50. BPPR filed a response in

opposition to Mr. Smith's Motion to Dismiss on April 6, 2017, ECF No. 52, and, that same day, Plaintiff filed a response informing the Court it does not oppose Mr. Smith's Motion to Dismiss, ECF No. 54. Mr. Smith replied in support of his Motion to Dismiss on April 13, 2017. ECF No. 57. On April 14, 2017, Plaintiff filed a reply in support of its Motion to Interplead Bond. ECF No. 59.

BPPR filed its Motion to Dismiss Crossclaims on June 9, 2017. ECF No. 72. Mrs. Babcock responded in opposition to BPPR's Motion on July 17, 2017, ECF No. 78, to which BPPR replied on July 24, 2017, ECF No. 79.

The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Plaintiff's Motion to Interplead Bond, Mr. Smith's Motion to Dismiss, and BPPR's Motion to Dismiss Crossclaims.

### III. PLAINTIFF'S MOTION TO INTERPLEAD BOND

In Plaintiff's Motion to Interplead Bond, it requests an order: (1) directing it to interplead a nominal bond concerning the disputed assets; (2) relieving it of any further liability regarding the disputed assets and discharging it from this action; (3) enjoining Defendants from instituting or prosecuting any proceeding in state, including Puerto Rico, or federal court affecting Mrs. Babcock's Account; and (4) awarding it reimbursement for its attorneys' fees and costs incurred in this action. The Court will address each of Plaintiff's requests in turn.

#### A. Plaintiff's Request for an Order Directing it to Interplead a Nominal Bond

##### *1) Contentions of the Parties*

Plaintiff contends it should be permitted to interplead a bond under 28 U.S.C. § 1335 because it faces multiple claims to the assets in Mrs. Babcock's Account and takes no legal position

5

as to which Defendant is entitled to the assets. Plaintiff submits permitting it to deposit a bond in a nominal amount is appropriate under the circumstances. Plaintiff posits that permitting it to deposit a nominal bond conditioned upon its compliance with any final order of the Court regarding the rightful owner of the assets avoids the risk of irreparable harm to Mrs. Babcock, satisfies the statutory interpleader requirements, and mitigates costs. Plaintiff further explains § 1335 contemplates the Court may exercise discretion regarding the amount of a bond to be posted in an interpleader action.

BPPR argues the Court should require Plaintiff to deposit the entire amount at issue or an equivalent bond. In support of this position, BPPR avers the Court lacks jurisdiction over this action if the money or bond deposited is unable to cover the amount in controversy. BPPR maintains a nominal bond is insufficient to confer jurisdiction or to protect its interests.

Both Mrs. Babcock and Mr. Smith have failed to oppose the portion of Plaintiff's Motion to Interplead Bond requesting the Court direct Plaintiff to interplead a nominal bond.

### 2) *Discussion and Analysis*

The Court notes no Defendant disputes the propriety of an interpleader action regarding the disputed assets in Mrs. Babcock's Account. The issue, rather, is the amount of assets or a bond Plaintiff must deposit with the Court.

Section § 1335 states in relevant part:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader . . . if

(1) Two or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property . . . and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper,

6

> conditioned upon compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

28 U.S.C. § 1335.

The Court rejects BPPR's argument it must require Plaintiff to pay into the Court's registry the entire amount of the disputed assets or an equivalent bond to establish jurisdiction in this case. The plain language of § 1335 provides an interpleader plaintiff may give a bond "in such amount and with such surety as the court or judge may deem proper" as an alternative to depositing the money or property at issue. *See id.* Thus, the Court has discretion to permit Plaintiff to deposit a bond in an amount less than the amount in controversy, and such a bond is sufficient to invoke interpleader jurisdiction under § 1335 when it is given in an amount the Court deems proper.

The Court is likewise unpersuaded by BPPR's assertion a deposit of the disputed assets or an equivalent bond is necessary to protect BPPR's interests. The Agreed Preliminary Injunction Order requires Plaintiff, to the best of its ability, to preserve a balance in Mrs. Babcock's Account of $399,738.51 during the pendency of this action. ECF No. 51. Thus, BPPR already has assurance the disputed assets will be protected, and there is no indication Plaintiff will fail to honor its obligation to preserve the assets. Requiring a bond in an amount equivalent to the disputed assets would needlessly raise the costs of litigation.

The Court agrees with Plaintiff it is better for Plaintiff to deposit a bond rather than the disputed assets because depositing the assets would require liquidating at least a portion of Mrs. Babcock's Account, which could result in irreparable harm to Mrs. Babcock in the event she ultimately prevails in this action. The Court holds a bond in the amount of $10,000 conditioned upon Plaintiff's compliance with any present or future order of the Court in this matter is sufficient to protect the interests of BPPR and to invoke interpleader jurisdiction under § 1335. Such a bond

constitutes more than a nominal bond, but a bond in a greater amount is unnecessary in light of the obligations the Agreed Preliminary Injunction Order imposes upon Plaintiff.

Accordingly, the Court will grant as modified the portion of Plaintiff's Motion to Interplead Bond seeking an order requiring it to interplead a nominal bond. The Court will direct Plaintiff to give a $10,000 bond payable to the Clerk of Court and conditioned upon Plaintiff's compliance with any present or future order or judgment of the Court in this matter.

### B. Plaintiff's Request for an Order Relieving it of any Further Liability and Discharging It from this Action

#### *1) Contentions of the Parties*

Plaintiff urges the Court to enter an order relieving it of any further liability apart from giving a bond and abiding by any final resolution of this case and discharging it from this action. Plaintiff proclaims such an order is appropriate in an interpleader action when the plaintiff has acted in good faith and has satisfied the requirement of depositing the disputed assets or giving a bond; Plaintiff proffers it has acted in good faith and stands ready to give a bond at the Court's direction.

Mrs. Babcock argues Plaintiff's request to be relieved of liability and discharged from the action is premature because she has not yet answered the Complaint or filed potential counterclaims against Plaintiff. Mrs. Babcock asserts it would be improper to discharge Plaintiff if there were a possibility it might be independently liable on counterclaims. Mrs. Babcock asks the Court to deny Plaintiff's request or, in the alternative, to withhold ruling on Plaintiff's Motion to Interplead Bond until she has had an opportunity to answer the Complaint and assert any potential counterclaims against Plaintiff.

BPPR proclaims the Court should deny Plaintiff's request to be discharged because Plaintiff has failed to satisfy the jurisdictional requirements of 28 U.S.C. § 1335. In support of

this position, BPPR relies upon the same jurisdictional arguments outlined above that it presents in opposition to Plaintiff's request for an order directing Plaintiff to interplead a nominal bond.

Mr. Smith has not opposed Plaintiff's request to be relieved of further liability and discharged.

### *2)* *Discussion and Analysis*

28 U.S.C. § 2361 outlines the process and procedure for interpleader actions brought under § 1335. It provides in relevant part the "district court shall hear and determine the [interpleader] case, and may discharge the plaintiff from further liability . . . ." 28 U.S.C. § 2361. Thus, a district court has discretion to relieve an interpleader plaintiff from further liability and to discharge it from the action. *See id.*; *see also Auto Parts Mfg. Miss., Inc. v. King Constr. of Hous., LLC*, 782 F.3d 186, 195-96 (5th Cir. 2015) (holding the district court acted within its discretion in discharging the interpleader plaintiff from the action); *N.Y. Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983) ("Normally an interpleader action is concluded in two stages, the first determining that the requirements of § 1335 are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants . . . ." (citation omitted)).

Mrs. Babcock's contention that Plaintiff's request is premature because she has not yet had an opportunity to file counterclaims against Plaintiff is no longer pertinent. Mrs. Babcock answered the Complaint on April 27, 2017, and asserted counterclaims against Plaintiff. ECF No. 64. Mrs. Babcock, however, voluntarily dismissed her counterclaims against Plaintiff on May 16, 2017, ECF Nos. 68, 73, and no claims are pending against Plaintiff in this matter. Therefore, Mrs. Babcock's only argument submitted in opposition to Plaintiff's request to be relieved of further

liability and discharged is no longer applicable and fails to constitute a ground for denying Plaintiff's request.

BPPR's position the Court is unable to discharge Plaintiff because Plaintiff has not effectively invoked interpleader jurisdiction is likewise unavailing. As set forth above, the Court will direct Plaintiff to deposit a $10,000 bond conditioned upon its compliance with any order or judgment in this matter, and the Court holds Plaintiff will satisfy jurisdictional requirements under § 1335 by giving such a bond. Consequently, BPPR has offered no viable argument in opposition to Plaintiff's request to be discharged.

Because Plaintiff is a disinterested holder of the disputed assets, takes no position regarding which Defendant is entitled to the assets, and has acted in good faith, the Court will grant the portion of Plaintiff's Motion to Interplead Bond requesting the Court relieve Plaintiff of any further liability apart from depositing an appropriate bond, and, provided Plaintiff complies with the Court's directions regarding giving a bond, the Court will discharge it from this action. *See* 28 U.S.C. § 2361.

    **C.**    **Plaintiff's Request for an Order Enjoining Defendants from Instituting or Prosecuting Any Other Proceedings Affecting the Disputed Assets**

        *1)*    *Contentions of the Parties*

Plaintiff requests the Court permanently enjoin Defendants from instituting or prosecuting any other actions or proceedings in federal or state court, including in Puerto Rico, concerning Mrs. Babcock's Account. Plaintiff explains 28 U.S.C. § 2361 authorizes the Court to issue such an injunction. Plaintiff insists an injunction is necessary because this Court has jurisdiction over the assets and the potential claimants, and this is therefore the proper forum to resolve competing claims to the disputed assets.

BPPR claims Plaintiff's requested injunction is inappropriate because this interpleader action is impermissible; BPPR asseverates Plaintiff is wrongfully attempting to have this Court review the decisions of the Puerto Rico Court. Alternatively, BPPR posits that, if the Court were to issue an injunction, it should not enjoin the entire Puerto Rico Action because it is possible there are other assets besides Mr. and Mrs. Babcock's Accounts that might be subject to garnishment by the Puerto Rico Court. BPPR also contends any injunction should be limited to the extent of Plaintiff's bond.

Neither Mrs. Babcock nor Mr. Smith oppose Plaintiff's request for an injunction.

### *2) Discussion and Analysis*

As an initial matter, the Court notes BPPR's contention that any injunction granted should be narrower than that requested by Plaintiff because there are additional assets that might be subject to garnishment in the Puerto Rico Action is misplaced. BPPR seems to suggest Plaintiff is requesting the Court enjoin the entire Puerto Rico Action. Plaintiff, however, is requesting the Court enjoin Defendants from instituting or prosecuting any other actions or proceedings affecting Mrs. Babcock's Account; Plaintiff is not requesting the Court enjoin the entire Puerto Rico Action. *See* ECF Nos. 33-2 at 11-12, 59 at 5.

Although the scope of Plaintiff's requested injunction is proper, the Court holds a permanent injunction such as the one Plaintiff seeks is unnecessary at this time because there is already a preliminary injunction in effect with material terms identical to the injunction Plaintiff requests. *See* ECF No. 51 at 3-4. The Agreed Preliminary Injunction Order entered on April 6, 2017, prohibits all parties from "instituting or prosecuting any other action or proceeding in any state or federal court (including Puerto Rico) concerning any portion of the assets in [Mrs. Babcock's Account] . . . until such time as this action is finally adjudicated and/or dismissed by

11

the parties or closed by the Court . . . ." *Id.* at 3. Because the parties are already enjoined from instituting or prosecuting any other actions or proceedings regarding Mrs. Babcock's Account while this case is pending, the Court need not issue a permanent injunction to the same effect at this time. Accordingly, the Court will dismiss without prejudice the portion of Plaintiff's Motion to Interplead Bond seeking a permanent injunction.

**D.     Plaintiff's Request for an Order Awarding Its Attorneys' Fees and Costs**

*1)      Contentions of the Parties*

Plaintiff also seeks an order awarding it reimbursement for its attorneys' fees and costs incurred in this action. Plaintiff avers case law supports awarding an interpleader plaintiff who is a neutral custodian of the disputed assets its costs and fees. Plaintiff proffers an award in this case is proper because Plaintiff has acted diligently, neutrally, and with good faith. Plaintiff would like permission to submit an affidavit setting forth its attorneys' fees and costs after it is discharged from this action.

Mrs. Babcock alleges equity does not support awarding Plaintiff its attorneys' fees for the following reasons: 1) Plaintiff's misrepresentation of the ownership of Mrs. Babcock's Account led to this action; 2) Plaintiff wrongfully provided BPPR with confidential information about Mrs. Babcock's Account; 3) Mrs. Babcock lacks responsibility for Plaintiff's involvement in the Puerto Rico Action; and 4) Mrs. Babcock has also incurred substantial expenses to protect her assets. Additionally, Mrs. Babcock argues Plaintiff's request is unsupported by any evidence, and it is therefore impossible to determine whether the request is reasonable.

BPPR likewise maintains awarding Plaintiff its attorneys' fees and costs would be improper. BPPR asserts Plaintiff has driven up the costs of litigation, and Plaintiff's various

alleged mistakes, such as identifying Mrs. Babcock's Account as belonging to Mr. Babcock and failing to initially report Mr. Babcock's death, led to this interpleader action.

Mr. Smith has failed to oppose Plaintiff's request for attorneys' fees and costs.

### *2) Discussion and Analysis*

Plaintiff has failed to cite any controlling precedent in support of its assertion an interpleader plaintiff is entitled to recover its attorneys' fees and costs, and the Court is unaware of any controlling precedent on the matter. Furthermore, while the Court is of the opinion Plaintiff has acted in good faith in this matter, Mrs. Babcock and BPPR raise legitimate questions regarding whether Plaintiff could have lessened apparent confusion in the Puerto Rico Action by clarifying the ownership and status of Mr. and Mrs. Babcock's Accounts sooner, which Mrs. Babcock and BPPR suggest could have obviated the need for this action. Because of the lack of any controlling precedent supporting an award of attorneys' fees as well as the plausible suggestion Plaintiff could have taken earlier steps to clarify the ownership of the disputed assets, the Court will deny the portion of Plaintiff's Motion to Interplead Bond requesting an award of Plaintiff's attorneys' fees and costs incurred in this action.

## IV. SMITH'S MOTION TO DISMISS

In Smith's Motion to Dismiss, he urges he should be dismissed from this case because he neither has nor claims any interest in the disputed assets and is therefore not a proper party to this action. Smith waives any claim he might have to the assets in Mrs. Babcock's Account and explains that, under S.C. Code Ann. § 66-6-101(10), Mr. Babcock's Account was a payable on death account that designated Mrs. Babcock as the beneficiary, and the assets in it therefore transferred to Mrs. Babcock upon the death of Mr. Babcock under S.C. Code Ann. § 62-6-

13

202(b)(2). Smith further elaborates the transfer of the assets in Mr. Babcock's Account to Mrs. Babcock was not testamentary pursuant to S.C. Code Ann. § 62-6-204.

BPPR opposes Smith's Motion to Dismiss on the ground there is allegedly a question of fact regarding whether the assets in Mr. Babcock's Account in fact passed to Mrs. Babcock upon Mr. Babcock's death. In support of this contention, BPPR cites several actions of Plaintiff that BPPR contends show Plaintiff previously considered the disputed assets as belonging to Mr. Babcock. BPPR argues, if the assets in Mr. Babcock's Account did not in fact pass to Mrs. Babcock, then they should have been listed as assets of Mr. Babcock's estate and are available to satisfy BPPR's claim against Mr. Babcock.

BPPR further claims, even if Mr. Babcock's Account transferred to Mrs. Babcock outside of probate, Mr. Smith might have a claim to the disputed assets under S.C. Code Ann. § 62-6-205,[*] which provides "no multi-party account is effective against an estate of a deceased party to transfer to a survivor sums needed to pay debts . . . if other assets of the estate are insufficient." S.C. Code Ann. § 62-6-205.

Neither Plaintiff nor Mrs. Babcock oppose Mr. Smith's Motion to Dismiss.

Because Smith unequivocally states in his Motion to Dismiss he "hereby waives any and all claims to the account [the disputed assets]," ECF No. 35 at 2, the Court holds Smith should be dismissed from this action. BPPR's arguments regarding whether Smith might be able to assert a claim against the disputed assets are inapposite in light of Smith's unqualified waiver of any claim to the assets. Accordingly, the Court will grant Smith's Motion to Dismiss.

---

[*] BPPR cites S.C. Code § 62-5-205 in its response to Smith's Motion to Dismiss. ECF No. 52 at 3. There is, however, no such provision in the South Carolina Code, and it appears BPPR is instead relying upon S.C. Code § 62-6-205.

## V.   BPPR'S MOTION TO DISMISS CROSSCLAIMS

### A.   Contentions of the Parties

BPPR avers in its Motion to Dismiss Crossclaims the Court should dismiss Mrs. Babcock's crossclaim asserted against BPPR for tortious interference with contractual relations for failure to state a claim. In particular, BPPR posits Mrs. Babcock's crossclaim is insufficient because she fails to adequately plead the existence of a contract, the breach of a contract, and the absence of justification for BPPR's actions. BPPR also asserts Mrs. Babcock's argument in support of her crossclaim is against public policy because it would effectively prevent all garnishment actions by exposing all garnishees to liability for breach of contract and all creditors pursuing garnishment to contractual interference claims. Lastly, BPPR maintains the crossclaim arises out of its conduct and statements in the Puerto Rico Action and is therefore barred by an absolute privilege covering statements made in relation to litigation.

Mrs. Babcock refutes BPPR's arguments and maintains her crossclaim is properly pled.

### B.   Discussion and Analysis

The Court is unable to hold Mrs. Babcock's crossclaim against BPPR fails as a matter of law because it is contrary to public policy or barred by an absolute privilege covering statements made in connection with litigation. BPPR provides little analysis and no citations in support of its public policy argument. Garnishment proceedings arise in a variety of contexts, and BPPR has failed to convince the Court Mrs. Babcock's theory is an affront to public policy on the ground that, if successful, it would prohibit all garnishment actions. Similarly, BPPR cites no controlling precedent in support of its contention Mrs. Babcock's crossclaim is barred by an absolute privilege covering statements made during litigation. Even if the Court were to hold such a privilege is

potentially applicable, the Court is unpersuaded at this early stage of litigation such a privilege in fact applies to the circumstances giving rise to Mrs. Babcock's crossclaim.

Although the Court rejects BPPR's public policy and litigation privilege arguments, BPPR does correctly highlight deficiencies in the pleading of Mrs. Babcock's crossclaim. Mrs. Babcock's crossclaim is conclusory and does little more than recite the elements of a cause of action for tortious interference with contractual relations. The Court, however, is unprepared at this early stage of litigation to dismiss Mrs. Babcock's crossclaim against BPPR. The Court is of the opinion Mrs. Babcock should instead be given an opportunity to amend her crossclaim to cure its pleading deficiencies, and the Court will therefore sua sponte grant Mrs. Babcock leave to amend.

Under the circumstances of this case, the Court holds it is within the best interests of justice to grant Mrs. Babcock leave to amend her crossclaim. *See* Fed. R. Civ. P. 15(a)(2). The Court is unable to say with any certainty granting Mrs. Babcock an opportunity to amend the deficiencies in her crossclaim would be futile. Further, there is a suggestion of neither bad faith nor prejudice. Accordingly, under the liberal standard for granting leave to amend, Mrs. Babcock should be provided the opportunity to amend her crossclaim against BPPR. Mrs. Babcock, however, should take notice the Court will likely refuse to grant another opportunity for her to amend her crossclaim in the future in the interest of preserving the time and resources of BPPR and the Court. Therefore, the Court will deny without prejudice BPPR's Motion to Dismiss Crossclaims and will grant Mrs. Babcock leave to amend her crossclaim against BPPR.

## VI.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Plaintiff's Motion to Interplead Bond is **GRANTED AS MOFIDIED IN PART, GRANTED IN PART, DISMISSED WITHOUT PREJUDICE IN PART, AND DENIED IN PART**, Smith's Motion to Dismiss is **GRANTED**, BPPR's Motion to Dismiss Crossclaims is **DENIED WITHOUT PREJUDICE**, and Mrs. Babcock is **GRANTED** leave to amend her crossclaim against BPPR.

The portion of Plaintiff's Motion to Interplead Bond requesting the Court enter an order directing Plaintiff to interplead a nominal bond is **GRANTED AS MODIFIED**, and Plaintiff is hereby directed to post security with the Clerk of Court in the amount of $10,000 and conditioned upon compliance with any future orders of the Court in this matter.  Plaintiff is directed to post this security within three (3) days of the filing of this Order.  The portion of Plaintiff's Motion to Interplead Bond requesting the Court relieve Plaintiff of any further liability and discharge it from this action is **GRANTED**.  Plaintiff is hereby relieved from liability in this matter apart from posting a bond as directed above and abiding by any order of the Court in this action, and the Court hereby directs the Clerk of Court to discharge Plaintiff from this case upon Plaintiff's posting of a bond in accordance with the requirements set forth above.  The portion of Plaintiff's Motion to Interplead Bond seeking a permanent injunction is **DISMISSED WITHOUT PREJUDICE**, and the portion requesting an award of attorneys' fees and costs is **DENIED**.

Mrs. Babcock shall file an amended crossclaim against BPPR within seven (7) days of the filing of this Order.

Because the Court's holdings articulated above are dispositive of the pending motions, the Court declines to address the parties' remaining arguments.  *See Karsten v. Kaiser Found. Health*

*Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest *dicta*.").

**IT IS SO ORDERED.**

Signed this 16th day of August 2017 in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE